UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR.,

        Plaintiff,

                                        Case No. 2:07-cv-61

v.                                       HON. R. ALLAN EDGAR

PATRICIA CARUSO, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Kenneth Colvin, Jr., filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia L. Caruso, Special Activities Coordinator Dave Burnett, Food Service Director Wayne DeShambo, Assistant Food Service Director Gerald Anderson and Gerald Riley.  On or about September 24, 2003, Plaintiff entered into a settlement agreement with the MDOC in a previous lawsuit resulting in his placement on a Kosher meal diet on or about September 24, 2003.  Plaintiff was transferred on February 28, 2006, to the Alger Maximum Correctional Facility from the Standish Maximum Correctional Facility.  Plaintiff was not placed on a Kosher diet at the new facility.  He was told that it was not indicated that he needed a Kosher diet on the transfer order, but it would be investigated.  On March 1, 2006, in response to a kite, defendant Riley wrote plaintiff stating that "I checked with the Special Activities Coordinator and you are not approved for the Kosher Meal Program."  Plaintiff sent a letter explaining the mistake and stating that he had a copy of the settlement agreement and court order for defendant Riley to review.  Defendant Riley did not answer or respond to plaintiff's letter.  Plaintiff filed grievances on

March 5, 2006, and March 10, 2006.  Plaintiff began receiving Kosher meals on March 16, 2006.

The response at Step I of the grievance, dated March 27, 2006, explained:

> Prisoner Colvin . . . is currently receiving Kosher meals.  Mr. Burnett informed Chaplain Riley on 03/13/06 that the initial denial was incorrect and instructed LMF to accommodate him as quickly as possible . . . .

Plaintiff alleges that he did not receive Kosher meals for over fifteen days and ate only fruit served with his meals.

Plaintiff also complains that defendants DeShambo and Anderson served non-Kosher meal items with his Kosher meals.  Plaintiff asserts that on October 1, 2006, he received non-Kosher orange juice, on October 8, 2006, he received a non-Kosher vegetarian burger, and on November 8, 2006, he received a non-Kosher bagged dinner meal.  In each of these instances, the prison acknowledged that a mistake had been made.  Plaintiff asserts that on September 28, 2006, he received non-Kosher lasagna, on October 20, 2006, plaintiff alleges that he received non-Kosher bread and on October 23, 2006, plaintiff did not receive any bread.  Plaintiff alleges that he received non-Kosher milk and non-Kosher powdered milk on November 5, 2006.  Plaintiff asserts that he was told the kitchen uses non-Kosher pans and ovens to prepare Kosher foods.  On several occasions plaintiff alleges that the kitchen served non-Kosher eggs, and on December 24, 2006, plaintiff alleges that he was served non-Kosher muffins.  Plaintiff alleges that on December 24, 2006, the kitchen served breakfast juice taken out of the original container and poured in cups.  Plaintiff asserts that his meals have not been securely wrapped and are served with non-Kosher meals.  Plaintiff feels that it is necessary for the prison to have only Jewish practicing prisoners working in the Kosher kitchen.

Plaintiff alleges he has tried to obtain Jewish religious literature through the Chaplain's Office, defendant Riley and the general library.  Plaintiff alleges that defendant Riley

does not have any Jewish literature and the library only has four Jewish books.  Plaintiff asserts that when he has tried to attend Jewish services he has been told that Jewish services are currently not available.  Plaintiff sent a letter to defendant Riley requesting the names of all Rabbis and Synagogues in the Upper Peninsula of Michigan.  He received a response that there were not Synagogues in the Upper Peninsula of Michigan.  Plaintiff has asserted that he is filing this action under 42 U.S.C. § 1983 and under the Religious Land Use and Institutionalized Persons Act.

Defendants Anderson, Deshambo and Riley move for summary judgment on the merits of the case.  Defendants Anderson, Burnett and Caruso move for summary judgment based upon an alleged lack of exhaustion.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996

F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed

to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448

(6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants first argue that plaintiff failed to properly exhaust his grievances because

staff considered the grievance regarding the delay in receiving Kosher meals resolved, but plaintiff

pursued the grievance through Step III.  At Step III, the grievance was rejected as frivolous and an

abuse of the grievance process.  Defendants' argument is confusing at best.  If defendants are arguing

that plaintiff did not have to file any further grievances after staff considered the grievances resolved,

then plaintiff exhausted his grievances at that point.  What plaintiff did after that point would be of

no consequence.  Without doubt, if plaintiff did not pursue his grievances through Step III, defense

counsel would be asserting that plaintiff failed to exhaust the grievance process on this issue.

Defendants are attempting to place plaintiff in a "Catch 22."  Nevertheless, it is clear that plaintiff

exhausted his grievances on this issue and defendants have failed in their burden of establishing lack

of exhaustion.  It further appears that plaintiff exhausted at least some of his claims against each

defendant.  Defendants have not met their burden of establishing that plaintiff failed to exhaust his

claims.  Accordingly, the focus of the recommendation will be on the merits of plaintiff's claims.

Defendant Riley argues only that he is entitled to qualified immunity from damages

for the short denial of plaintiff's placement on the Kosher meal plan.  Government officials,

performing discretionary functions, generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999);

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

- 5 -

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422

- 6 -

(6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Defendant Riley clearly did not deny plaintiff Kosher meals. Defendant Riley simply responded to correspondence sent by plaintiff to the warden. Defendant Riley checked the prison records and found that plaintiff was listed on the records as a Muslim. Plaintiff's religious preference, for whatever reason, apparently has not been officially changed on his records from Muslim to Jewish. Based upon the prison records, defendant Riley was justified in believing that plaintiff was a Muslim prisoner and not a Jewish prisoner. Moreover, the delay in receiving the Kosher meals was unintentional and resolved within a reasonable amount of time. Accordingly, in the opinion of the undersigned, defendant Riley is entitled to qualified immunity from damages.

Plaintiff asserts that his First Amendment rights and rights under the Religious Land Use and Institutionalized Persons Act were violated. Plaintiff contends that the defendants have violated his First Amendment right to freely practice his religion. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n.

- 7 -

2 (1972).  Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest."  *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction.  *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote).  *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness."  *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations."  *Turner*, 482 U.S. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate."  *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness.

- 8 -

*Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test."  *Id.* at 90.  "Prison officials need not show that *no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Plaintiff similarly claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1.  Section 2000cc-1 states:

    (a)     General Rule

          No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

          (1)     is in furtherance of a compelling governmental interest; and

          (2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(b).

Plaintiff claims that he was denied Jewish services and Jewish books.  However, at the time plaintiff requested Jewish services he was the only prisoner making that request and there were no Jewish religious services available.  Plaintiff was never prohibited from practicing his religious beliefs.  Further, according to defendant Riley, there are over a dozen Jewish books available in the prison library and plaintiff is free to purchase religious books through approved vendors.  It is clear that plaintiff's religious rights were not violated.

Plaintiff claims that on many occasions he received non-Kosher meal items on his Kosher food tray.  Further, plaintiff believes that his Kosher meals are improperly prepared and that

only Jewish prisoners should prepare Kosher meals at the prison.  It does not appear that plaintiff ever ate a non-Kosher item that was allegedly delivered on his Kosher meal tray.  On a few occasions the prison admits that a mistake was made involving the Kosher meal.  Plaintiff has not shown that the mistakes were intentional or other than isolated incidents.  In each case, the matter was addressed and corrected by the prison staff.  Plaintiff has not established that he is receiving meals that are improperly prepared as Kosher.  Defendants have shown that plaintiff receives properly prepared Kosher meals.  In the opinion of the undersigned, plaintiff cannot show any violation of his religious rights.

Plaintiff names defendant Caruso as a defendant.  It appears that defendant Caruso was named as a defendant simply because she is the Director of the MDOC.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).  Similarly, it does not appear that defendant Burnett was involved in the denial of Kosher meals to plaintiff.  Moreover, it appears that defendant Burnett was behind the move to correct the mistake and provide plaintiff his Kosher meals.  Although defendants Caruso and Burnett failed to join the summary judgment

motion that discussed the merits of the claims, it is obvious that these two defendants are also entitled to dismissal from this action.

Plaintiff has filed a motion to amend his complaint to add new defendants to his claims. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). In the opinion of the undersigned, plaintiff's proposed amended complaint would be futile.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to defendants' Motion for Summary Judgment. Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #46) be granted and this case be dismissed in its entirety. It is further recommended that defendants' motion for summary judgment due to lack of exhaustion (Docket #60) be denied. It is further recommended that plaintiff's motions to amend (Docket #76) and for discovery (Docket #74) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is

barred, he should be required to pay the $455 appellate filing fee in one lump sum.

        NOTICE TO PARTIES:  Objections to this Report and Recommendation must be

served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


          /s/ Timothy P. Greeley             
          TIMOTHY P. GREELEY
          UNITED STATES MAGISTRATE JUDGE

Dated:  May 22, 2008