UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, #192744,

        Plaintiff,                              Case No. 2:07-cv-61

v.                                                       Honorable R. Allan Edgar

PATRICIA CARUSO, *et al.*,

        Defendants.
_____/

**MEMORANDUM OPINION**

This prisoner kosher meal case has been remanded to this Court by the Court of Appeals. *See Colvin v. Caruso*, 605 F. 3d 282 (6th Cir. 2010).  Plaintiff Kenneth Colvin, Jr. is a prisoner in the Michigan Department of Corrections (MDOC).  The defendants who remain in this case are Dave Burnett, who at the time of the events giving rise to this case was MDOC's Special Activities Coordinator, but who is now retired; Gerald Riley, the Chaplain at Alger Correctional Facility (LMF); Keith Castello, a corrections officer at LMF when this case arose, but now a state probation officer in a different part of the state; David Bergh, who was the Warden at LMF when this case arose, but who is now the Warden at a different state prison; Gerald Anderson, who oversaw meal preparation for prisoners at LMF, but who is now retired; and Greg Exelby, a corrections officer at LMF.  All defendants are sued in their official and individual capacities.

The Court of Appeals directed this Court to address two issues that were presented in Colvin's amended complaint.  The first issue is whether any of the defendants violated 42 U.S.C.

§ 1983 by depriving Colvin of his First Amendment free exercise rights and/or his rights under the the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, by denying him a kosher diet on May 14, 2007, after protein powder was found in his cell. The second issue is whether any of the defendants violated Section 1983 and/or RLUIPA by failing to reinstate him to a kosher diet in July 2007.[1] *Colvin v. Caruso,* 605 F. 3d at 295. Of course, there is also the issue of what relief should be granted, assuming that Colvin prevails on one or more of his claims.

## I. FACTS

This Court conducted a bench trial and heard the testimony of Mr. Colvin, as well as each of the remaining defendants and an additional witness. Colvin's religious preferences have been subject to evolution. He started out as a Pentecostal Christian. At some point in his incarceration he was affiliated with some branch of Islam. Since 2002, however, he has consistently claimed to be a practitioner of Judaism. As a result of prior litigation, the MDOC in 2004 agreed to place Colvin on a kosher diet, and the U.S. District Court for the Western District of Michigan, Southern Division, entered an order which provided in part that "Kenneth Colvin, Jr., is eligible for the Michigan Department of Corrects (sic) (MDOC) Kosher Meal Program ("Program"), as set forth in MDOC Operating Procedure ("OP") 05.03.150-A, and he is ORDERED to be placed on the Program." *Colvin v. Burnett*, 1:02-cv-728 (W.D. Mich. May 19, 2004).

On May 3, 2007, Officer Exelby conducted a search of Colvin's cell while Colvin was at dinner. This was a routine search done as a matter of course on randomly selected prisoner cells.

---

[1] Colvin also asserts a "retaliation/conspiracy"claim, asserting that the defendants conspired to deprive him of his constitutional and statutory rights. The Court will deal with this claim later in this memorandum opinion.

No one told Exelby to search this particular cell, and there is no reason to believe that the selection of Colvin's cell had anything whatsoever to do with his kosher meal status. Officer Exelby found either a bottle or a pouch of protein powder in Colvin's cell. He turned it over to someone at LMF, and that is the extent of his involvement in this case. It fell to Resident Unit Supervisor Keith Castello to decide what to do about the protein. In this endeavor he was guided by the relevant MDOC regulation, which provides as follows:

> A prisoner approved to eat from a religious menu shall have that approval rescinded if he/she eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion. The approval shall be rescinded only after a hearing is conducted pursuant to Administrative Rule 791.3310 to establish the basis for that removal. A prisoner may reapply to eat from a religious menu no sooner than 60 calendar days after approval is rescinded the first time and no sooner than one year after approval is rescinded a second time. A prisoner may reapply to eat from a religious menu only with approval of a CFA Deputy Director if approval has been rescinded more than twice.

Policy Directive 05.03.150, ¶ WW (effective May 24, 2004).[2]

Castello held an administrative hearing in accordance with the regulation. Wanting to be careful, he adjourned the hearing once to determine whether the protein was, or was not, kosher. He consulted Chaplain Riley, who advised him that the protein was not kosher. The Court finds that in this particular instance, Chaplain Riley was indeed correct. With this information, Castello reconvened the hearing and, in accordance with the above regulation, denied Colvin a kosher diet.

The Court credits Colvin's testimony that he acquired the protein in the late 1990's and used it for bodybuilding. He never used it for food. Actually, he had not consumed it since he became a follower of Judaism, but only used it to barter for goods with other inmates. It is unclear whether Castello had this information when he was conducting the administrative hearing.

---

[2]This same provision appears in subsequently issued MDOC regulations. *See* Policy Directive 05.03.150, ¶ VV (effective Sept. 20, 2007).

After 60 days, Chaplain Riley was faced with Colvin's request to reinstate the kosher diet. He interviewed Colvin, asking the three basic questions prescribed by the MDOC regulations. The three regulation questions are:

> 1. Briefly explain the major teachings of your designated religion.
> 2. Why is a kosher diet required by this religion?
> 3. What is a kosher diet?  In other words, how does it differ from food otherwise provided by the institution?  What types of food are not allowed?

Operating Procedure 05.03.150-A, ¶ L (effective July 28, 1997).

Chaplain Riley testified that he was not impressed with Colvin's knowledge of Judaism and kosher.  Although Riley knew that Colvin had been receiving kosher via the 2004 court order, he located a computer entry from February 11, 2002, whereby Colvin had declared his religious preference as "Muslim."[3] The perceived lack of knowledge plus the previous "Muslim" preference were enough for Riley to, according to his testimony, doubt Colvin's sincerity.  He therefore authored a memorandum to Warden David Bergh recommending that Colvin be denied a religious diet.  Riley also stated in the recommendation that Colvin had commented that he (Colvin) intended to litigate.  This, to Riley, also indicated a lack of sincerity because in his experience many prisoners requested a religious diet, expecting to be denied, and then litigated for financial gain.

Chaplain Riley's memorandum then went to defendant Dave Burnett, MDOC's Special Activities Coordinator, in Lansing.  On July 25, 2007, Mr. Burnett reviewed the information provided by Riley, and sent an additional memorandum to Warden David Bergh.  In this memorandum Burnett, relying on Riley's information, referred to Colvin's lack of knowledge of Judaism and kosher.  However, he also said that "Colvin now self identifies as a Muslim," and that his (Colvin's) "faith preference is Al Islam."  He also repeated Riley's suspicion that Colvin was pushing for a kosher diet to litigate for financial gain.  Burnett concluded that "Consequently, based on the information available to me, and based on the appearance of a lack of sincerity,

---

[3]Although Chaplain Riley did not see it, there is an MDOC record of Colvin having designated "Judaism" as his religious preference two months later, on April 22, 2002.

4

Colvin's request for Kosher accommodations is denied at this time.  He should not be accommodated with Kosher meals."  Warden Bergh dealt with this matter like he has had to deal with hundreds of similar prisoner requests and grievances.  He relied on the information provided to him by Riley and Burnett, and concluded that Colvin would not receive a kosher diet.  Defendant Gerald Anderson supervised the food service at LMF.  Before the 2007 events that form the claims remaining in this case, Colvin frequently complained to him about what Colvin said was the non-kosherness of his diet that was supposed to be kosher.  It is clear, however, that Anderson had nothing to do with the claims that remain in this case.

## II. ANALYSIS

### Wrongful Removal

Colvin was removed from the kosher diet regimen on May 14, 2007, because of a strict application of MDOC Policy Directive 05.03.150, which in effect institutes a "zero tolerance" policy for possession of even one non-kosher food item by prisoners on a religious diet.  The Court of Appeals in this case has summarized the four factor test for evaluation of prison regulations that affect prisoners' constitutional rights. *Colvin v. Caruso,* 605 F. 3d at 293, *citing Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999).  These are the factors set forth by the Supreme Court in *Turner v, Safley*, 482 U.S. 78, 90-91 (1987). Here, of course, we are dealing with a prisoner's First Amendment right to freely practice his religion. Those factors are:

(1) There must be a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.  In this case the MDOC certainly has, as it asserts, an economic interest in restricting the kosher diet to those prisoners who have a sincere belief that such a diet is necessary ro practice their religion.  Kosher diets are an added expense to the MDOC.

(2) Whether there are alternative means for prisoners to exercise the constitutional right that is being affected.  Here it is difficult to see how Colvin had any other means of eating, assuming his religious sincerity.

(3) The impact accommodation of the asserted constitutional right will have on guards and

other inmates, and on the allocation of resources. There is no evidence, and no reason to believe that if the MDOC regulation provided a modicum of flexibility in the decision to deny a religious diet, there would be a ripple effect on prison staff or inmates. *See Turner*, 482 U.S. at 90 (explaining that courts should be particularly deferential to the discretion of corrections officers when the accommodation would have such a ripple effect).

(4) Whether there is an absence of ready alternatives to the regulation. There is no reason the conclude that if the "zero tolerance" aspect of the MDOC regulation were modified, the cost of providing kosher meals would escalate. For example, a regulation could provide that if a prisoner committed some number of dietary violations in a given time period, the religious meals could be suspended. *See Kuperman v. Warden, New Hampshire State Prison*, 2009 WL 4042760, at *2 (D.N.H. Nov. 20, 2009). Human nature, being what it is, will rarely allow any person to achieve religious perfection, let alone dietary perfection. One can be both religious and an occasional backslider. One slip in following the tenets of a religion does not necessarily transform one into a nonbeliever.

In short, an evaluation of the *Turner v. Safley* factors weighs in favor of Mr. Colvin on this issue, and leads to the conclusion that MDOC Policy Directive 05.03.150 has denied him his First Amendment free exercise right.

RLUIPA provides even more protection to Colvin than does the First Amendment. *Colvin v. Caruso*, 605 F. 3d at 296. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

As discussed above, there is indeed at least some governmental interest in limiting religious meals to sincere believers. However, the MDOC's draconian regulation here worked to deprive Colvin of his diet for a one time possession of protein powder. This is certainly not the

least restrictive means of accomplishing that cost-saving objective.  The regulation therefore violates RLUIPA as well as the First Amendment.  As the Court of Appeals strongly indicated in this case, the MDOC regulation is overly restrictive of inmates' religious beliefs.  *Colvin v. Caruso*, 605 F. 3d at 296.  In this case, the regulation worked to deny Colvin both his First Amendment free exercise right as well as his statutory rights under RLUIPA.

However, defendants Keith Castello and Greg Exelby are both entitled to qualified immunity.  As the Court of Appeals said in this case, a qualified immunity determination involves a two pronged inquiry: (1) whether a constitutional right has been violated, and (2) whether that right was clearly established.  *Colvin v. Caruso*, 605 F.3d at 290.  In applying this test, this Court can consider whether Exelby and Castello would have reasonably believed that their actions were not in violation of Colvin's constitutional rights.  *Id*.  Exelby merely conducted a search of Colvin's cell, and Castello merely followed the regulation. In the summer of 2007 there had not been any determination that the regulation was in any way deficient.  Castello would not have had any reason to believe that complying with the regulation would be in contravention of Colvin's constitutional rights.

## Failure to Reinstate

On July 16, 2007, Chaplain Riley made the recommendation that Colvin not be reinstated to the kosher diet. Special Activities Coordinator Dave Burnett backed up that recommendation when he sent his memorandum on July 25, 2007, to Warden Bergh.  That recommendation became the MDOC's decision when Warden Bergh, relying upon what Riley and Burnett told him, ratified it.  In arriving at his conclusion that Colvin was not sincere in his Judaism, Riley employed the three question test specified by MDOC Operating Procedure 5.03.150A.  These questions are directed at an inmate's knowledge of his/her designated religion and of what (in this case) constitutes a kosher diet.  The Court of Appeals was critical of this three question test because it tests objective knowledge of Judaism, and therefore does not represent "a proper inquiry into the sincerity of Colvin's beliefs." *Colvin v. Caruso*, 605 F.3d at 298 (recognizing that sincerity is the touchstone for determining whether a religious belief is entitled to free exercise protection).

The "sincerity" test is one of those broad legal pronouncements that looks good on paper,

but is difficult to apply.  How does one determine another person's sincerity?   It is self evident that a person's knowledge of the tenets of his/her claimed religion, as well as his knowledge, in this case, of what a kosher diet actually is, has some bearing upon sincerity.  While we cannot require Mr. Colvin to be a Rabbinical scholar, it is certainly reasonable for the MDOC to determine whether he has a modicum of knowledge about the religion of which he professes to be an adherent.  The regulation is non-exclusive, in that it does not require MDOC officials to base their decision on a prisoner's answers to the questions, and therefore, to this Court at least, it does not appear that the regulation locks the MDOC into a "purely objective approach." In Colvin's case, Chaplain Riley was obviously aware that it was his duty to determine Colvin's sincerity, not just his objective knowledge; and Riley purported to use other factors in his recommendation regarding Colvin's kosher diet.  In short, this Court is unwilling to conclude that the three questions regulation (OP 05.03.150A) violates either the First Amendment or RLUIPA.  It could perhaps be revised to eliminate the possibility of lawsuits like this one, but it certainly by itself does not impose a substantial burden on the religious exercise of prisoners.

    This conclusion, however, does not mean that Colvin's free exercise rights were not violated in this case by the failure to reinstate him to his diet in July 2007.  Chaplain Riley and Special Activities Coordinator Dave Burnett, in their recommendations that Colvin be denied reinstatement, relied heavily upon a conclusion that Colvin was calling himself a "Muslim." Riley said that "Prisoner Colvin declared 'Muslim' as his religious preference on 02/11/2002." Burnett then reported to Warden Burnett that Colvin's "faith preference was Al Islam."  These characterizations of Colvin's religious views are misleading at best, and false at worst.  Both Riley and Burnett knew that in 2004 the MDOC had agreed to a judgment of the U.S. District Court in this district that Colvin was to be placed on the kosher meal program. On March 13, 2006, Burnett had advised Warden Bergh in a memorandum that "per court decision, Colvin is approved for kosher accommodation." A copy of this memorandum went to Riley, and Riley testified that he was aware of the court judgment.  Nothing happened between the date of the Court judgment (May 19, 2004) and 2007 (the time of the events here in question) which could have given either Riley or Burnett any indication that Colvin's religious outlook had changed.  Indeed, based on the prior court judgment, Riley and Burnett had placed Colvin on a kosher diet (after a 16 day hiatus)

8

when Colvin came to LMF in 2006.[4] Moreover, Colvin had been consistently complaining to the kitchen staff at LMF that the technical requirements of kosher were not being met. The impression that Riley and Burnett gave that Colvin was really a "Muslim" masquerading in Judaism's clothing was wrong, and it was more than just a reasonable mistake. Neither Riley nor Burnett are entitled to qualified immunity on the 1983 claim. They violated Colvin's clearly established free exercise right. They also, by substantially burdening the exercise of Colvin of his religion, violated RLUIPA.

### Retaliation and Conspiracy

At trial, Colvin asserted that he was making a "retaliation and conspiracy" claim, although the claim is not set forth in the amended complaint with any clarity. The Court of Appeals elected to deal with this under the issues which this Court has discussed above. *Colvin v. Caruso*, 605 F. 3d 282, 295. This Court will do likewise. In any event, it is clear that there was neither a conspiracy nor retaliation against Colvin here. There is no evidence of any sort of agreement between two or more persons. *See Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996) (stating that this is a required element in a civil conspiracy claim). Nor is there any evidence here that the adverse actions taken by any of the defendants were motivated by protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir 1999) (stating that this is a required element in a retaliation claim).

### Defendants Bergh and Anderson

As related above, Defendant Gerald Anderson has no connection to the allegations in Colvin's amended complaint that remain in this case. Defendant David Bergh merely performed the ministerial duty of not reinstating Colvin to his diet in July 2007. He acted without any personal knowledge of the facts in this case, and only upon the recommendations of Chaplain Riley and Dave Burnett. These defendants have no liability here, and judgment will be entered in their behalf.

---

[4] The 2006 events first gave rise to this case, and are discussed at length by the Court of Appeals in its prior opinion in this case. *Colvin v. Caruso*, 605 F.3d at 286-93.

## III REMEDY

### Damages

Colvin seeks $750,000.00 in "compensatory, nominal, and punitive" damages. Colvin was moved from LMF to Marquette Branch prison sometime in 2009. After another brief culinary kosher episode (the subject of yet another lawsuit), Colvin has been on a kosher diet for some time now, though the record is unclear as to precisely how long. Nor is the record clear on how long Colvin was off his diet as a result of the 2007 incidents in this case. This Court has had the occasion to observe Mr. Colvin twice in the past nine months. He does not look like he missed many meals. There is no evidence here of physical injury, and without that he cannot recover for mental or emotional injury. 42 U.S.C. § 1997e(e); *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001); *Allah v. Hafeez*, 226 F.3d 247, 250-51 (3rd Cir. 2000). Colvin testified that he suffered pain and suffering. However the Court is not persuaded that he endured either of these maladies. Colvin also seeks punitive damages. In Section 1983 cases, punitive damages are permitted "when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983*).* The facts of this case do not even remotely approach that threshold. Therefore, no punitive damages will be awarded. Damages cannot be awarded against defendants in their official capacities under the First Amendment or RLUIPA. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Sossamon v. Texas*, 131 S. Ct. 1651 (2011). Finally, it should be noted that damages cannot be awarded against defendants Riley and Burnett in their individual capacities under RLUIPA. *Colvin v. Caruso,* 605 F.3d 282, 289; *see also Atkins v. Christiansen,* 2011 WL 4527357, at *2 (W.D. Mich. Sept. 28, 2011). The Court will, however, order defendants Gerald Riley and Dave Burnett to pay Colvin nominal damages of $1.00 each.

### Injunctive Relief

Colvin essentially seeks to enjoin the defendants from ever again taking him off the kosher diet. This is simply impractical. Of the two culpable individual defendants, one (Burnett) is retired. The other (Riley) is at another prison. Insofar as these defendants are sued in their official capacity, an injunction is likewise inappropriate. There is no way of knowing whether

Colvin's views will change next week or next year . If they do not change, Colvin has an adequate remedy at law. *See Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006) (internal citation omitted). Colvin also asks this Court ensure that the MDOC properly prepare kosher meals. There is no evidence in this case, however, of the way kosher meals should be prepared and served. Furthermore, none of Colvin's claims regarding the serving of non-kosher meals remain in this case. Like Colvin, this court is no Rabbinical scholar, and will not become involved in menu preparation at the MDOC. Therefore all requested injunctive relief will be DENIED.

### Declaratory Relief

For the reasons expressed above, MDOC Policy Directive 05.03.150 violates prisoners' First Amendment free exercise rights to the extent that it provides that a prisoner's religious menu is to be revoked for mere possession of "any food item that violates a tenet of his or her designated religion."

### Court Costs

Colvin will be awarded court costs in accordance with 28 U.S.C. § 1920.


A JUDGMENT WILL ENTER:


Dated:   2/9/2012                             /s/ R. Allan Edgar
                                              R. Allan Edgar
                                              United States District Judge